**Opinion filed June 17, 2021**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00361-CR

_____

## ABEL ARMENDARIZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-38,387**

## MEMORANDUM OPINION

The jury convicted Abel Armendariz of sexual assault of a child. Based upon Appellant's plea of "true" to a prior felony conviction alleged for enhancement purposes, the jury assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifty years. In a single issue on appeal, Appellant challenges his sentence based on the contention that he received ineffective assistance of trial counsel. We affirm.

*Background Facts*

The indictment alleged that Appellant sexually assaulted M.D., a female child younger than seventeen, on or about July 28, 2010. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West Supp. 2020). Appellant was tried for the offense in December 2018. M.D. testified that she was fourteen in July 2010 and that she was twenty-three at the time of trial. M.D. testified that she lived in the same apartment complex as Appellant and his girlfriend or wife, Stephanie Orum. M.D. stated that Appellant was her friend's stepfather and that she sometimes babysat for him. M.D. considered Orum to be a friend and someone she could trust.

M.D. described an evening in July 2010 when she and her friends were "hanging out" drinking alcohol on a stairwell in the apartment complex. M.D. testified that Orum joined them. Orum eventually invited M.D. to Orum's apartment "to sober up" and watch a movie. Orum led M.D. into a bedroom where Appellant appeared to be asleep on the bed, wearing only his boxers. Orum pushed M.D. onto the bed at which time Orum began undressing M.D. while Appellant held M.D. down. M.D. testified that Appellant then had sexual intercourse with her, after which Orum performed oral sex on M.D. while Appellant stood in the corner of the room and watched.

Appellant did not testify at trial. However, in a recorded interview with the Odessa Police Department, Appellant stated that M.D. was the one that instigated having sex with him.

Appellant elected to go to the jury on punishment. The State first called Shawn Patrick Sweat as a punishment witness. In May 2018, Sweat was employed as a security officer for ION Security. While on duty at La Promesa Apartments in Odessa at 10:40 p.m. on May 28, 2018, Sweat observed a man punch a woman in the face with his fist. Sweat identified Appellant as the man that he observed that

evening. Sweat detained Appellant while waiting for the police to arrive, and he called an ambulance for the woman.

Officer Luis Villapando of the Odessa Police Department testified that he was called to La Promesa Apartments on May 28, 2018, for a disturbance involving Appellant and his wife, D.A.[1] Officer Villapando stated that D.A. was pregnant at the time. Officer Villapando identified Appellant as the person arrested for the incident.

The State also offered seven exhibits into evidence, including one "pen packet." The exhibits revealed that Appellant had prior convictions for burglary of a building, criminal mischief, violation of a protective order (two), and assault family violence (two).

The remaining topic addressed at the punishment hearing concerns the matter that gives rise to Appellant's claim of ineffective assistance of counsel. Prior to the start of the punishment hearing, Appellant filed a "motion to strike" wherein he alleged that the State should be precluded from presenting evidence of "any prior sexual contact or sexual crimes" against any child, including any such crimes involving his wife while she was a minor. Appellant asserted in the motion that the State had failed to provide notice of its intent to use the extraneous offense at punishment.

Outside the presence of the jury, the attorneys and the trial court discussed a document forwarded to Appellant's trial counsel through "Share File." The notice of the offenses committed against Appellant's wife while she was a minor was contained on the second page of this document. Appellant's trial counsel called as a witness a person that works in his office that is "in charge of [his] computer discovery program." She testified that she was only able to retrieve the first page of

---

[1]Because there is an allegation of sexual assault committed against Appellant's wife while she was a minor, we will refer to her by her initials.

the notice from the discovery that the State shared with trial counsel. The notice was prepared in 2013 at a time when Appellant was represented by other trial counsel. When asked if the notice was in the file obtained from previous counsel, trial counsel's employee testified: "I'm not sure. I can't say with certainty." In response, the prosecutor stated that the entire notice was placed into Share File and that it was also filed with the trial court clerk. The trial court overruled Appellant's motion to strike, citing the fact that trial counsel's employee was uncertain if the document was in the file received from prior counsel.

The State then called D.A. as a witness. Prior to her testimony, Appellant's trial counsel asked to approach the bench, at which point he advised the trial court that it "or somebody" should advise D.A. to claim spousal privilege. Trial counsel stated, "This woman has been barricaded in the DA's office all day and I haven't spoken to her about her privilege." When D.A. later stated that she did not want to testify, Appellant's trial counsel informed the trial court that D.A. was attempting to invoke spousal privilege. The trial court ruled that spousal privilege did not apply for the matters about which the State sought to question D.A.

D.A. testified that she first met Appellant when she was thirteen years old and that she had sexual intercourse with him when she was fourteen, prior to their marriage. In that regard, Appellant was nineteen years older than D.A. On cross-examination, D.A. testified that she and Appellant were in love when they had sex when she was fourteen. She also testified that Appellant was a good father to their four children. On redirect, D.A. testified that, when she first started seeing Appellant, he gave her money and that she continued to see him—even though he threatened her with physical violence—because he gave her money.

Appellant's trial counsel called Appellant's mother, Ruby Givens, as a witness on punishment. She testified that Appellant was a good father and a good provider.

4

*Analysis*

In his sole issue on appeal, Appellant contends that he received ineffective assistance of counsel. He contends that trial counsel was deficient because (1) he failed to file a request for notice under Article 37.07 of the Texas Code of Criminal Procedure, (2) he failed to review the contents of the clerk's file, and (3) he failed to interview D.A. to prepare for her "devastating" testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2020).

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so

5

outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

We note at the outset that Appellant did not file a motion for new trial. Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matters that Appellant contends were deficient. Furthermore, trial counsel has not had an opportunity to explain what effect, if any, his alleged deficient conduct had on the manner in which he represented Appellant at the punishment hearing. Appellant essentially contends that such an inquiry is unnecessary because there was no conceivable trial strategy for trial counsel to not be prepared for the State's punishment evidence.

Appellant initially contends that trial counsel was deficient because he did not file a motion specifically requesting notice under Article 37.07. Based upon this contention, Appellant asserts that trial counsel was not entitled to the notice that he asserted at trial that he did not receive. We disagree with Appellant's contention. As noted previously, this is not a case where the State did not provide any notice of the extraneous offense that it sought to offer at punishment. To the contrary, the State provided notice of the extraneous offense in a document that specifically referenced Article 37.07. Accordingly, the filing of a request for notice under Article 37.07 is not relevant to our inquiry because the State provided notice of the extraneous offense without a request being filed.

Moreover, the failure to file a request for notice under Article 37.07 is not so egregious, by itself, to constitute ineffective assistance of counsel. *See Rodriguez v. State*, 981 S.W.2d 357, 359 (Tex. App.—San Antonio 1998, no pet.) (noting that a rule finding counsel's failure to request notice of extraneous offense evidence ineffective per se "would effectively block any attempt by the state to introduce evidence of this type, because in the case of an unfavorable result a defendant would be able to claim ineffective assistance as a matter of right"); *see also Brown v. State*,

6

No. 01-10-00791-CR, 2012 WL 1649852, at *8 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (mem. op., not designated for publication); *Huddleston v. State*, No. 01-00-01174-CR, 2001 WL 1243962, at *3 (Tex. App.—Houston [1st Dist.] Oct. 18, 2001, pet. ref'd) (not designated for publication) ("[T]rial counsel's failure to request notice of intent to introduce extraneous offenses at punishment does not *per se* constitute ineffective assistance of counsel.").

Appellant also asserts that trial counsel failed to interview D.A. to determine what her testimony would be at punishment. Appellant bases this complaint on the comment by trial counsel that "[t]his woman has been barricaded in the DA's office all day and I haven't spoken to her about her privilege." We disagree with Appellant's contention that this comment by trial counsel indicated that he never interviewed D.A. about the matter to which she testified. To the contrary, trial counsel's comment only addressed that he had not been able to advise her about her spousal privilege.[2] Accordingly, the record does not support Appellant's contention that trial counsel never interviewed D.A. prior to her testimony.

Appellant additionally contends that trial counsel was deficient for failing to review the contents of the clerk's file to discover the notice provided by the State. We will assume for the purpose of our analysis that this conduct fell below an objective standard of reasonableness. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990) ("It is evident that a criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel."). However, this does not end our inquiry.

---

[2]We note that Appellant's trial counsel was able to convey information to D.A. about invoking her spousal privilege based upon trial counsel's comments in the trial court. Appellant does not challenge the trial court's ruling that overruled her claim of spousal privilege. In that regard, the spousal privilege to not testify in a criminal case does not apply in cases in which the other spouse is being tried for a crime against any minor child or for matters that occurred before marriage. *See* TEX. R. EVID. 504(b)(4)(A)(i), (B).

Appellant is essentially asserting that trial counsel should have had notice that the State was going to present evidence that he had had sex with D.A. when she was a minor. However, Appellant has not established what he would have done differently had trial counsel discovered the notice sooner. As noted in *Brown*, "[courts] have denied a defendant's ineffective-assistance claim when the defendant failed to develop a record explaining the steps [that he] would have taken had trial counsel received notice of the extraneous offense evidence or establishing that the extraneous offense evidence was inadmissible in the first instance." 2012 WL 1649852, at *8. Furthermore, Appellant has not addressed in his brief the second *Strickland* prong with respect to prejudice. *See* 466 U.S. at 694. The failure to brief both prongs has been deemed to be a waiver of a claim of ineffective assistance of counsel. *See Bessey v. State*, 199 S.W.3d 546, 555 (Tex. App.—Texarkana 2006), *aff'd*, 239 S.W.3d 809 (Tex. Crim. App. 2007) (finding inadequate briefing where the appellant made no effort to show how record demonstrated prejudice under *Strickland*'s second prong); *Peake v. State*, 133 S.W.3d 332, 334 (Tex. App.—Amarillo 2004, pet. ref'd) (overruling the appellant's claim of ineffective assistance of counsel because issue was inadequately briefed and noting that the appellate court has "no duty to unilaterally fill the void appellant left" by his briefing).

As was the case in *Brown*, the record is not sufficiently developed in this case to establish ineffective assistance of counsel. *See* 2012 WL 1649852, at *8. Appellant has not identified any particular witness or other evidence that his trial counsel could have presented to rebut D.A.'s testimony. *See id.* Additionally, Appellant has not asserted that his strategy of going to the jury for punishment would have been different had trial counsel had prior knowledge of the State's intent at punishment. Furthermore, Appellant has not asserted that a continuance or postponement would have been of benefit to him or that trial counsel should have requested one. In this regard, the purpose of the notice requirement under

8

Article 37.07 is to prevent a surprise to the defendant. *See Green v. State*, 589 S.W.3d 250, 266 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd). Thus, "a defendant's 'failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.'" *Id.* n.4 (quoting *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982)); *see also Francis v. State*, 445 S.W.3d 307, 319 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014) (holding that, if evidence is "a legitimate surprise," a party can request a continuance and the failure to do so precludes a finding of harm).

Finally, there is no argument or showing that the extraneous offense evidence was inadmissible. *See Brown*, 2012 WL 1649852, at *8. Article 37.07, section 3(a)(1) provides as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, *including but not limited to* the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. A court may consider as a factor in mitigating punishment the conduct of a defendant while participating in a program under Chapter 17 as a condition of release on bail. . . .

CRIM. PROC. art. 37.07, § 3(a)(1) (emphasis added).

A trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of trial. *See Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). "[T]he admissibility of evidence during 'the punishment phase of a non-capital trial is a function of policy rather than a question of logical relevance.'" *Ellison v. State*, 201 S.W.3d 714, 719

(Tex. Crim. App. 2006) (quoting *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002)). At the punishment hearing, relevant evidence is that which assists the factfinder in determining the appropriate sentence given the particular defendant in the circumstances presented. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). This language grants wide latitude in the admission of evidence deemed relevant, including evidence arising after the offense. *Contreras v. State*, 59 S.W.3d 362, 365 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Appellant has not established ineffective assistance of counsel under either *Strickland* prong. Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

June 17, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.